## HENRY LINCOLN & others *vs.* HOPE INSURANCE COMPANY.

The insertion of the words " not liable for any repairs made in California," in a policy of in surance on a vessel, which contains the usual printed clause that " the insured shall not have the right to abandon the vessel for the amount of damage merely, unless the amount which the insurers would be liable to pay, under an adjustment as of a partial loss, shall exceed half the amount insured," does not prevent the assured from making an abandonment and claiming a constructive total loss, if the vessel is stranded in San Francisco, and cannot be thoroughly repaired there at a cost of less than three fourths of her value, if the expense of such temporary repairs there as will make her seaworthy to be navigated to New York, (the nearest port at which full repairs can be made,) with the expenses of such navigation and of full repairs at New York, would exceed three fourths of her value.

In computing a constructive total loss, the cost to be estimated is what it will cost to completely and thoroughly repair the vessel, not merely what will make her seaworthy, capable of keeping the sea with cargo.

An abandonment which states that the vessel has been stranded at San Francisco, and is so much injured as to render it necessary to place her on shore, and that she cannot be repaired there, is sufficient to authorize the assured to recover a constructive total loss upon the ground of the amount of damage and the cost of repairs at the nearest port at which repairs can be made.

In computing a constructive total loss, the cost of taking a vessel from the place where she is stranded to the nearest port at which she can be completely repaired is to be taken into consideration.

ACTION OF CONTRACT to recover a constructive total loss under a policy of insurance for $9000, on the Barque Orion, valued at $18,000, for one year from the 8th of November 1849, at the rate of six per cent. ; " to add one per cent. if in the North Sea between October 1st and March 1st; and to add one per cent for each passage to or from Mexico or Texas ; also to add one per cent. for each time she may proceed into or out of Columbia River, Oregon." Upon the face of the policy these words also were written : " Not liable for any repairs made in California ; " and this clause printed : " It is also agreed, that the insured shall not have the right to abandon the vessel for the amount of damage merely, unless the amount which the insurers would be liable to pay, under an adjustment as of a partial loss, shall exceed half the amount insured."

At the trial before *Merrick*, J., it was in evidence that the vessel sailed from Boston for San Francisco on the 12th of No-

vember 1849 with a cargo of lumber; that she was sent out to the Pacific Ocean by her owners on a voyage for three years; (the master and owners meaning to employ her during that time, among other purposes, in carrying passengers between San Francisco and Panama, which was then a good business;) that she arrived safely off the port of San Francisco on the 'Oth of May 1850, and on the next day the master, having been unable to procure a pilot, attempted to work the vessel into the harbor, and in so doing ran her upon a rock, where, the weather being calm, she lay for thirty six hours, and until she was lightened; that she was then drawn up into the mud, in a secure place, and there remained in safety until the autumn, and might have remained in safety for a year; that while upon the rocks she leaked and was somewhat strained, but upon being hauled off into the mud became tight; that a survey was had upon the 12th of June, and on the 2d of July the master, without waiting for instructions from the owners, sold her by auction for $5000; that the purchaser afterwards hauled her upon the beach, and repaired her at an expense of $4000, ($2700 of which was occasioned by hauling her up for examination,) and sold her for $12,000; that, with the repairs so made upon her, she sailed for New York, taking a cargo of passengers to Realejo in Central America, at which place she arrived tight, but got ashore there and injured her bottom, and upon getting off sailed to Valparaiso in ballast, and thence to Rio Janeiro in ballast, and thence with a cargo of hides and coffee to New York, where she delivered her cargo in good condition; that upon her arrival at New York she was taken into dock, and put in a state of thorough repair at the further expense of $2300; that while she lay in San Francisco there was a monthly steam communication with Boston, where her owners, who were merchant of credit, resided, and received notice of this accident on or before the 27th of June, and on that day sent to the defendants the following letter of abandonment:

" Boston, June 27th 1850. Samuel Quincy Esq., President Hope Insurance Company, Sir: Being advised by Captain Henry C. Bunker, master of the Barque Orion, that the vessel stranded

in entering the port of San Francisco, and was so much in-jured as to render it necessary to place her on shore, and that she cannot be repaired there, we hereby abandon said vessel to the Hope Insurance Company, and claim payment of a total loss of the amount insured by their policy on said vessel, No. 4841, dated the 8th November 1849. As soon as the papers shall be received we shall hand them to you.

"Respectfully your obedient servants,

"Henry Lincoln & Co."

The substance of the instructions prayed for, and of those given to the jury, is stated in the opinion. A verdict was returned for the plaintiffs, and the case reported to the full court, before whom it was argued at November term 1855.

*C. G. Loring & H. Jewell*, for the plaintiffs.

*R. Choate & J. M. Bell*, for the defendants.

THOMAS, J. This is an action of contract upon a policy of insurance. The report finds that the vessel was stranded at San Francisco; that she could not be repaired there so as to make her in all respects as good as she was before, but that she could have been so repaired at that port as to have been made sea-worthy. It is found, that temporary repairs at San Francisco, the expense of navigating her to New York, (the nearest port where full repairs could be made,) and the expense of such full repairs at New York, would equal three fourths of her value. She was abandoned by the assured.

The court instructed the jury that if the vessel could not be thoroughly repaired at San Francisco at a cost less than three fourths of her value, nor partially repaired there and thoroughly repaired at New York for such sum, including expenses of navigation thereto, the owners had a right to abandon and recover for a total loss.

But for a special provision in this policy, no question could be made as to the correctness of these instructions. That provision or limitation is "not liable for repairs made in California."

The plaintiffs made no repairs in California, and make no claim for repairs there. But the defendants say that, under the policy, the insured have not the right to abandon the vessel for the

amount of damage merely, unless the amount which the insurers would be liable to pay under an adjustment as of a partial loss, shall exceed half the amount insured; that the criterion is the damage which the insurers would be liable to pay, and that, as no expense of repairs at San Francisco is to be paid by them, said expense is to be excluded in the estimate for a constructive total loss.

Such is not, we think, the sensible and just construction of the contract. Whether the defendants are to be liable for repairs made in California is one thing; whether the vessel is to be deemed constructively lost, upon an estimate for repairs made at the place of the injury, is another. The provision in the printed policy is made *alio intuitu,* and in reference to the general principles by which the right to abandon, where there is not an absolute loss, is to be regulated.

The parties have used a printed form of policy, containing the provision common to the policies in this commonwealth, as to the right to abandon for the amount of damage merely. They have inserted a limitation in another part of the policy, by which they are "not liable for repairs made in California."

What the insurers meant to guard against was, we think, the being liable, in case of partial losses, for repairs, as such, made in California, at the enormous prices at which only, as it is well known, labor and materials could then be procured in that country. We think the exception was not designed to affect the right of the insured to abandon and claim for a total loss.

Such a construction of the contract would defeat its purposes. That the vessel was intended to be used in the Pacific is shown from the face of the policy, indeed from the very exception itself. But this construction would render the policy of little or no value while on or near the coast of California. If the loss was such that it could be repaired in California at an expense less than half the amount insured, the assured must of course bear it themselves. It would fall within the exception. If the vessel could be repaired in California, and the expense would exceed half the amount insured, the plaintiffs, under the construction of the defendants, must also pay the expense, and could not aban·

don. If the expense of partial repairs at California, and of complete repairs at New York, and the expense of navigation thereto, should exceed half the amount insured, the plaintiffs could not abandon and claim for a total loss; they could only recover for the expense of navigating the vessel to New York, and of the additional repairs made there. The only event in which they could abandon and claim for a constructive total loss, would be when, having paid themselves the expense of repairs at California, to make the vessel navigable and seaworthy to New York, it was found that the expense of the additional repairs at New York, and of her navigation to that port would exceed three fourths of the value, allowing one third new for old; a contingency not very likely to occur.

This construction would substantially, and to all practical purposes, defeat the right to abandon and claim for a total loss by reason of the extent of damage. Such, we think, were not the intent and purpose of the exception. It has a clear, definite purpose to be effected, without thus extending it, to wit, to release the underwriters from the expense of repairs in California in case of partial losses.

Nor if, departing from the spirit, we were to adhere to the exact letter of the contract, would the case fall within the exception. The plaintiffs do not claim for repairs made in California. To these the limitation is literally restricted. The contract does not say the defendants shall not be liable for losses incurred in California. If the injury were of such nature that the vessel might be taken to another place for repair, the exception would not save the defendants. Nor can the provision as to the right to abandon for the amount of damage have reference or apply to repairs actually made. It is the estimate of repairs to be made, upon which the right of abandonment for a constructive total loss proceeds. After they were made, it would be too late to abandon. So that, looking at the intent and purpose of the parties, or adhering to the exact letter of the contract, the case of the plaintiffs is not within the exception.

2. The disposition of this question is a substantial disposition of the cause, unless, as the defendants suggest, the court were in

error as to the standard of repair. The presiding judge says, " completely and thoroughly repaired." The defendants say, the criterion in case of abandonment for constructive total loss is what it will cost to make the vessel seaworthy, capable of keeping the sea with cargo.

Upon an examination of the authorities cited by the defendants, we think they do not sustain this position, but, on the other hand, confirm the ruling of the presiding judge.

In *Sewall* v. *United States Ins. Co.* 11 Pick. 90, the court use the precise words, " thoroughly repaired."

In *Giles* v. *Eagle Ins. Co.* 2 Met. 140, a case of partial loss, the court held, that if a vessel receives a strain, which alters her shape so that she cannot be perfectly repaired without rebuilding her, and her value is thereby diminished, the underwriters are answerable for such diminished value, in addition to the expense of repairs, although the vessel is made seaworthy by such repairs.

The rule stated by Arnould, upon which the defendants seemed to rely, has reference to cases where the expense of repairs is increased by the decayed state and age of the ship. There the rule is, that if such ship can be repaired so as to keep the sea, at a cost less than her repaired value, the assured cannot elect to abandon because, owing to her decayed condition, the expenses of complete repairs would be greater than this. 2 Arnould on Ins. § 389.

In the section cited from Mr. Phillips, he only states, that the practicableness of repairs at the port of disaster is not conclusive as to the right to sell, instead of repairing ; but if the vessel is in a reparable condition, and can there be so repaired as to be seaworthy to take another cargo, or return in ballast to the home port, by expense and sacrifice on the whole, including the home passage, not exceeding half its value, the loss is not total. The only difficulty is, that he says nothing of the finishing of repairs at the home port. 2 Phil. Ins. § 1572.

To repair is to put the vessel substantially *in statu quo*, with the qualification of the allowance of new for old ; to restore what has been lost by the disaster. And the insured is entitled to

entire repairs, to entire restoration. No intimation was given to the jury that these repairs were to have reference to defects not caused by the disaster.

The underwriter is responsible for the repair or restoration of the damaged or destroyed part of the ship, with materials, workmanship, style and finish corresponding to its original character. 2 Phil. Ins. § 1428.

3. In regard to the abandonment, no question seems to have been made at the trial, except that under this form of abandonment it was not competent for the plaintiffs to rely upon the amount of damages or cost of repairs, but only upon the impracticability of making the repairs at that place.

If this were so, upon the view stated of what is the just standard of repair, the case finds that it was impracticable to have the vessel repaired at San Francisco. In other respects we are not able to see any defect in the abandonment. It states the stranding, the putting on shore, and the impracticability of repair; and the facts support it. No objection is made to the form, nor is any apparent.

4. That the cost of taking the vessel round to New York ought to be included, in the estimate of repairs upon which an abandonment could be founded, is well settled.

*Judgment on the verdict for the plaintiffs.*